UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GERALDINE DUNN**                                          CIVIL ACTION

**VERSUS**                                                   NO. 17-12777

**APACHE INDUSTRIAL SERVICES,**                              SECTION: "B"(1)
**ET AL.**

ORDER AND REASONS

Before the Court are: (1) defendant Apache Industrial Services, Inc.'s ("Apache") motion for summary judgment (Rec. Doc. 78); (2) plaintiff Geraldine Dunn's response in opposition (Rec. Doc. 82); (3) Apache's reply in support of their motion for summary judgment (Rec. Doc. 99); and (4) plaintiff's supplemental memorandum in opposition (Rec. Doc. 100). For the reasons discussed below,

**IT IS ORDERED** that defendant Apache's motion for summary judgment (Rec. Doc. 78) is **GRANTED IN PART** as to the hostile work environment and retaliation claims; and

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED IN PART** with respect to all other remaining claims in this litigation.

FACTS AND PROCEDURAL HISTORY

Plaintiff Geraldine Dunn is a resident of the parish of East Baton Rouge, Louisiana. Rec. Doc. 1 at 2. In June 2016, she was

1

employed as a bus driver and painter for Apache Industrial Services, Inc. ("Apache"), a foreign corporation with its principal place of business in Texas and subcontractor for Defendant Phillips 66 Company ("Phillips"). *Id.* at 3. Plaintiff alleges that Apache, along with Phillips, discriminated against her, retaliated against her, and wrongly terminated her. *Id.*

On or around August 8, 2016, Plaintiff began working a "turnaround job" for Apache. *Id.* Plaintiff claims she has approximately 15 years of experience and alleges that she was earning $19.00 per hour while her male counterparts were earning $23.00 per hour. *Id.* Plaintiff further alleges she spoke with management, specifically Tim Robichaux, about raising her hourly pay to $23.00 on more than one occasion. *Id.* She was told her hourly pay would be increased to $23.00, yet complains she never received an increase. *Id.* She asserts she was subsequently subjected to harassment and discrimination. *Id.* Specifically, she contends she was forced to perform additional duties that other male employees were not required to perform and was yelled at by her supervisor, Marlow, in front of other male employees.[1] *Id.* at 4.

In her complaint, plaintiff notes that she filed an Equal Employment Opportunity Commission ("EEOC") Charge, alleging unfair

---

[1] Plaintiff alleges in her Complaint that on or around September 28, 2016, a supervisor, Marlow, brought paint to the work area for male employees only. Plaintiff was told to get her own paint and contends that when she asked why, the supervisor began to yell at her. *See* Rec. Doc. 1 at 4.

treatment on October 13, 2016. *Id*. at 4. On October 24, 2016, Plaintiff claims she attended a meeting with safety management to discuss her complaints of knee pain. *Id*. She was given two days off from work and when she Returned on October 27, she had been terminated. Apache notes plaintiff was informed by Phillips 66 that it was exercising its right under the contract between Phillips 66 and Apache, and Phillips 66 no longer wanted plaintiff assigned to its project. Rec. Doc. 78-2 at 4. Further, defendant contends that Apache Coatings Operations Manager, Robbie Hunter, "instructed plaintiff to go to Apache's hiring center, as it was not Apache that ended plaintiff's assignment at Phillips 66." *Id*. Plaintiff contends that she was terminated in retaliation, and as a result of her filing the EEOC charge of discrimination. Rec. Doc. 1 at 4.

On November 28, 2016, Plaintiff claims to have filed another EEOC Charge of Discrimination (the "November 2016 Charge") alleging gender discrimination, retaliation, and unequal pay. *Id*. at 5. On January 4, 2017, Plaintiff claims to have filed yet another EEOC Charge of Discrimination (the "January 2017 Charge") alleging retaliatory wrongful termination. *Id*. at 13-14.

On August 20, 2017, Plaintiff received a "Dismissal and Notice of Rights" for "both of her aforementioned Charges of Discrimination[2]." Rec. Doc. 1 at 5. On November 20, 2017, exactly

---

[2] There is ambiguity in the phrase "both of her aforementioned Charges of Discrimination." Defendant notes in their motion for summary judgment that "plaintiff only filed two charges: the November 28, 2016 Charge (EEOC Charge

3

three months after receiving her Notice of Right to Sue letter from the EEOC, plaintiff filed her Complaint. Rec. Doc. 1 Plaintiff brought claims under Title VII of the Civil Rights Act of 1964; The Equal Pay Act of 1963; (3) the Age Discrimination in Employment Act of 1967; (4) La. Civ. Code. Art. 2315; and (5) the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967. Plaintiff also seeks damages pursuant to Equal Rights Under the Law, 42 U.S.C. § 1981(a); Retaliation, 29 U.S.C. § 215 (a)(3); and Reasonable Attorney Fees, 29 U.S.C. § 216 (b). Rec. Doc. 1 at 4-10.[3] On April 03, 2018, Apache filed a motion to dismiss for failure to state a claim in lieu of an answer. *See* Rec. Doc. 15. Subsequently, on December 26, 2018, this Court dismissed plaintiff's claims pursuant to 42 U.S.C. § 1981, the ADEA, and her state law claims against Apache, preserving only her gender discrimination claims and retaliation claims under Title VII and the Equal Pay Act. Rec. Doc. 54.

**LAW AND FINDINGS**

    **a. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to

---

No. 461-2017-00119) and the January 4, 2017 Charge (EEOC Charge No 461-2017-00319.)" Rec. Doc. 78-2 at 2. Defendant further notes that plaintiff likely initiated the process for filing a charge in October of 2016, as Apache received a Notice of Charge for EEOC Charge No. 461-2017-00119 on October 21, 2016. Therefore, plaintiff likely notified the EEOC of her intent to file a charge of discrimination, and thereafter perfected that charge on November 28, 2016.
[3] Plaintiff's claims against defendant Team Industrial Services, Inc., were dismissed on May 29, 2018. Rec. Doc. 54. Plaintiff's claims against Phillips 66 Company were dismissed on February 13, 2019. Rec. Doc. 56.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita*

5

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "This court will not assume in the absence of any proof that the nonmoving party could or would prove the necessary facts, and will grant summary judgment in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the [non-movant]." *McCarty v. Hillstone Rest. Grp.*, 864 F.3d 354, 357 (5th Cir. 2017).

### b. Plaintiff's Claims under the Equal Pay Act ("EPA")

The EPA states in pertinent part:

> No employer . . . shall discriminate . . .between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . .

29 U.S.C. § 206(d)(1).

To establish a prima facie case for disparate pay under the EPA, a plaintiff must show: "1. her employer is subject to the Act; 2. she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3. she was paid less than the employee of the opposite sex

6

providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993); *Wiley v. Am. Elec. Power Serv. Corp.*, 287 F. App'x 335, 340 (5th Cir. 2008).

An essential element of a prima facie case under the Equal Pay Act requires a showing that the plaintiff "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions" as an employee of the opposite sex. *Id.* at 153. Because Congress amended the Equal Pay Act to substitute the word "equal" for "comparable," the statute has been narrowly construed to be applied "only to jobs that are substantially identical or equal." *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973); *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 548 F.2d 1256, 1258 (5th Cir. 1972) ("It is not merely comparable skill and responsibility that Congress sought to address, but a substantial identity of job functions."); *see also Reznick v. Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 390 (5th Cir. 2004) (noting female plaintiff "must show that her job requirements and performance were substantially equal, though not necessarily identical, to those of a male employee") (citing 29 C.F.R. § 1620.13(e)).

In determining whether the positions require substantially equal work, a court conducts a case-by-case analysis in the context of the employer's particular practices. *Hodgson*, 468 F.2d at 1258; *see, e.g., Parr v. Nicholls State Univ.*, 2011 WL 838903, at *4-5

7

(E.D. La. Mar. 3, 2011) (considering varying roles, experience, and terms of employment for each position).

Apache contends that plaintiff is unable to establish a prima facie case for violation of the EPA, because plaintiff cannot adequately identify a comparator whom Apache paid more money. Rec. Doc. 78-2 at 6. Plaintiff was assigned to the Phillips 66 project, where she admitted that she engaged in painting, flagging, and bus driving activities. Rec. Doc. 78-6 at 8-9, *Deposition of Plaintiff*. In the morning, plaintiff would drive a bus, transporting workers to and from a specific work site. *Id*. While at the site, plaintiff engaged in painting. Rec. Doc. 78-6 at 9. Apache states in their motion that it, "denies that it ever assigned plaintiff to work as a painter. For purposes of this motion, however, defendant will accept plaintiff's statement that she performed painting work." Rec. Doc. 78-2 at 4, n.15. Plaintiff alternatively asserts that she "was assigned as a painter who was paid $19/hr., while her other male co-workers (who were also painters) were paid $22/hr." Rec. Doc. 100 at 4.

As clearly shown by parties' different evidentiary presentations, there are material factual disputes as to whether plaintiff's job requirements were substantially equal to those of a male employee and even whether she was assigned to the same job as male employees, i.e. painter. Further, the responsibilities, skills, and assignment of painter, bus driver, or flagger are not clearly delineated by either side. Thus, a case-by-case analysis

8

of the employer's practices in that regard cannot be conducted without clear and undisputed evidence. *Hodgson*, 468 F.2d at 1258. If, as plaintiff attests, her pay for work involved painting and other ancillary duties that male painters were not required to perform[4], she would arguably have a prima facie case for disparate pay based on the higher pay given to male painters. Summary disposition of the EPA claim is not proper currently due to existing disputed issues of material facts.

### c. Plaintiff's Claims Under Title VII

#### i. Gender Discrimination

Title VII states that it is unlawful "to discriminate against any individual with respect to his compensation ... because of such individual's sex." 42 U.S.C. § 2000e-2(a). When a plaintiff seeks to prove discrimination using circumstantial evidence, the plaintiff must prove that (1) plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position at issue, (3) the plaintiff was the subject of an adverse employment action, and (4) the plaintiff was treated less favorably because of membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 984-85 (5th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

---

[4] Plaintiff notes in her affidavit that she was the only Apache Employee to have a Commercial Driver's License (CDL).

If a plaintiff establishes a prima facie case and thus creates a presumption of discrimination, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision. Then finally, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual. However, the "ultimate burden" of persuasion remains with the plaintiff at "all times." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Apache contends that plaintiff's claims of gender discrimination pursuant to Title VII fail, similar to her claims under the EPA, as plaintiff is unable to identify an individual who performed the same or substantially similar function, whom Apache paid more than plaintiff. Rec. Doc. 78-2 at 6. As stated previously, factual discrepancies exist between the parties and preclude summary judgment on these grounds. Although Apache contends that plaintiff was not assigned to work as a painter, and that her ancillary duties of driving and flagging differentiate her from the comparator male painters she cites, plaintiff alleges that she was in fact assigned as a painter, and that her primary duties consisted of painting. Accordingly, summary judgment is not proper at this juncture.

Apache also contends that plaintiff is unable to show discriminatory intent on the part of Apache, as she was given the opportunity to advance to a higher paid position, and in addition

had received a rating of five out of ten on a performance review conducted by CF industries. Rec. Doc. 78-2 at 7. Apache contends that as a result of these facts, plaintiff cannot prove discriminatory intent on the part of Apache related to her compensation. *Id*. Plaintiff contends that she had asked for payment increases, yet she never received them. Rec. Doc. 100 at 6. Further, plaintiff alleges that the evaluation conducted by CF industries is "fabricated" and that no evaluation on her performance was ever conducted. *Id*. at 7. Again, the current existence of material factual disputes prevents summary judgment on this issue.

### ii. Harassment & Hostile Work Environment

Apache contends that plaintiff cannot sustain her claim for harassment or hostile work environment pursuant to Title VII. The United States Supreme Court has noted that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)(citations omitted). "Title VII was only meant to bar conduct that is so *severe and pervasive* that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.) (internal quotations omitted)(emphasis added).

11

In order to establish a claim for hostile environment, a plaintiff must show that the complained-of conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, (1993). A comment that merely causes offense "does not sufficiently affect the conditions of employment to implicate Title VII," and "is beyond Title VII's purview." *Id*. The determination of whether conduct is severe or pervasive enough to subject an employer to Title VII liability is an objective determination that is made by looking to all the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 655–56 (5th Cir. 2002), *overruled on other grounds by, Basarge v. Cheramie Marine, L.L.C.*, 675 Fed. App'x 417, 419 (5th Cir. 2017). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Shepherd*, 168 F.3d at 874.

Apache contends that Marlow Williams' demeanor was loud and abrasive, however not harassing in nature. Rec. Doc. 78- 2 at 7-8. In plaintiff's complaint, she alleges that during an incident involving scaffolding that:

12

> "[Plaintiff's] supervisor [Williams] informed the employees to go to the work area and get on the scaffold to paint. [Williams] brought paint over for the male employees; however, [plaintiff] was informed that she had to get down off of the scaffold and get her own paint. When [plaintiff] asked why she had to go get her own paint, [William] began yelling at her."

Rec. Doc. 1 at 4. Further, a passage from plaintiff's deposition reads as follows:

> Q. I'm just trying to figure out going to look at your first charge what you mean about you were subjected to harassment about your work and yelled at by [Williams]. Was there any incident other than the scaffolding incident where [Williams] yelled at you?
>
> A. Yeah. [Williams], yeah. You'd have to know [Williams]. But, yes, [Williams'] yell (sic) at me, but I would tune him out. [Williams] didn't really know how to communicate as a supervisor. He didn't know how to explain himself how he – what he wanted done and he would get upset when you didn't understand what he wanted.
>
> Q. So this was his personality?
>
> A. Yes. Because he kind of stutter (sic) a little bit when he speaks. And he never would make himself clear. He just gave orders and you were supposed to know what he was talking about.
>
> Q. When you said he would get upset, how did you know he was upset?
>
> A. His tone of voice.

Rec. Doc. 78-6 at 10. The above cited instances do not elevate Williams' actions to the level of harassment required under Title VII. William's comments to plaintiff do not appear to be frequent, nor do they appear to be sufficiently pervasive or severe as to result in plaintiff feeling more than slightly offended. Further, from the evidence presented, it appears that Williams engaged in

13

this abrasive behavior as to everyone on the jobsite and did not specifically direct his activities at plaintiff. Accordingly, Apache is entitled to summary judgment on plaintiff's claim of hostile work environment under Title VII, and that claim should be dismissed.

Apache also claims that an employer who takes effective steps to prevent harassment and has an employee who fails to follow the preventative procedures, is not liable for any ensuing harassment. Rec. Doc. 78-2 at 8. In support of their contention, Apache cites *Farragher v. Boca Raton*, 524 U.S. 775, 807 (1998). In *Farragher*, the United States Supreme court noted that "[a]n employer may, for example, have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense. If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care . . ." *Id*. at 806-07.

Here, it appears that plaintiff did not follow Apache's preventative procedures. The EEO statement reads in pertinent part: "If you feel that you have been discriminated against you should report the incident to your supervisor immediately. If you feel like you cannot go to your supervisor contact the EEO Officer direct at (713) 450-9307. *Id*. at 78-9. Plaintiff argues that she

14

"effectively followed" the procedures, as she was only required to go to the EEO Officer if she felt she could not go to her supervisor. Plaintiff notes that she reported the discrimination to her supervisor, Tim Robichaux, and stated: "Well, I approached [Robichaux] and I explained to him that they hired me as a bus driver and bus drivers make top pay. And when I got there, they assigned me to be a painter, which is two crafts. And he said I was correct. And I explained to him about my pay rate that I was supposed to have been making. They were supposed to be changing my pay rate back to $23. And he said that he would call the office and talk with someone in the office and he would let me know. Rec. Doc. 100 at 8; *see also* Rec. Doc. 100-2 at 8. Apache contends that requesting a change in pay is not sufficient to qualify as a report of discrimination. We agree.

Although plaintiff did note that there was a pay discrepancy, this one-time interaction with Tim Robichaux likely does not rise to the level of a complaint of harassment under Title VII. Rather, it appears to be a conversation about the pay discrepancy, and not an outright complaint that she was being treated unfairly by anyone at Apache. However, this contention by Apache is likely moot, as the "harassment" activities complained of by plaintiff do not rise to the requisite severe or pervasive level to sustain a claim under Title VII.

    **d. Retaliation Claims**

Under both Title VII and the EPA, an employer may not retaliate against an employee who opposes a discriminatory practice prohibited by the statute. *See* 42 U.S.C. § 2000e-3(a) (Title VII) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); 29 U.S.C. § 215(a)(3) (EPA) ("[I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."). "To state a claim for retaliation under Title VII, a plaintiff must show that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017); *see also Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 Fed. App'x 280, 285 (5th Cir. 2014) (stating the same standard for retaliation claims pursuant to the Equal Pay Act).

Apache challenges plaintiff's ability to make a prima facie showing for her claim of retaliation, as to both Title VII and the EPA, as to the third prong of the retaliation analysis. Rec. Doc. 78-2 at 9. Apache contends that plaintiff is unable to show a

16

causal connection between her complaints and any alleged retaliation. *Id*. Specifically, Apache contends that there is no evidence that Williams was aware of plaintiff's complaints or charge of discrimination, and "admits [that] Williams' 'personality' was to speak loudly and brusquely," and did not suggest that Williams was harsher with her than other individuals on the same job site. *Id*. (citing Rec. Doc. 78-6 at 10-11, *Plaintiff's Deposition*). Further, Apache claims that it took no adverse action against plaintiff, that Apache played no part in the decision to remove plaintiff from the Phillips 66 worksite, and that Apache was willing to place plaintiff on another assignment; however, Apache contends that plaintiff took no steps to follow up with Apache. Rec. Doc. 78-2 at 9.

Plaintiff contends that: (1) although Williams' personality was "hard-hitting" she nevertheless asserts that her treatment was different from other male employees after she made an inquiry about her pay; (2) the mere fact that she was treated differently by Williams', after her inquiry, suggests that he had knowledge of her complaints; and (3) the close proximity of her termination and Apache's receipt of the EEOC notice, all support her claim for retaliatory discharge. Rec. Doc. 100 at 9-10.

As stated above, the hostile work environment claims submitted by plaintiff are without merit. Marlow Williams' activities and behavior towards plaintiff do not rise to the requisite severe and pervasive level that is required under Title

17

VII. Therefore, any claim that Williams' actions towards plaintiff were retaliatory in nature is inapposite. Additionally, there is no countervailing evidence that plaintiff's removal from her last assignment was precipitated by Phillips 66, not Apache. Rec. Doc. 78-2 at 4. Notably, plaintiff does not expressly raise this issue in her opposition memorandum.

    New Orleans, Louisiana this 12th day of August 2020

_____
SENIOR UNITED STATES DISTRICT JUDGE